Nos. 23-1647; 23-1648; 23-1649; 23-1650; 23-1651; 23-1652; 23-1781

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE THIRD CIRCUIT

OI EUROPEAN GROUP, B.V.,

*Plaintiff-Appellee,*

v.

BOLIVARIAN REPUBLIC OF VENEZUELA,

*Defendant-Appellant.*

PETRÓLEOS DE VENEZUELA, S.A.,

*Intervenor-Appellant.*

(caption continued on inside cover)

On Appeal from the United States District Court for the District of Delaware
Misc. Nos. 19-mc-290; 20-mc-257; 21-mc-46;
21-mc-481; 22-mc-156; 22-mc-453
The Honorable Leonard P. Stark, United States Circuit Judge

## REPLY BRIEF OF THE BOLIVARIAN REPUBLIC
## OF VENEZUELA

Donald B. Verrilli, Jr.
Elaine J. Goldenberg
Ginger D. Anders
Sarah Weiner
Kathleen Foley
MUNGER, TOLLES & OLSON LLP
601 Massachusetts Ave. NW
 Suite 500E
Washington, D.C. 20001-5369
(202) 220-1100

*Counsel for the Bolivarian Republic of
Venezuela*

---

NORTHROP GRUMMAN SHIP SYSTEMS, INC.,
*Appellee,*
v.
THE MINISTRY OF DEFENSE OF THE REPUBLIC OF VENEZUELA,
PETRÓLEOS DE VENEZUELA, S.A.,
*Appellants.*

---

ACL1 INVESTMENTS LTD., ACL2 INVESTMENTS LTD.,
and LDO (CAYMAN) XVIII LTD.,
*Appellees,*
v.
BOLIVARIAN REPUBLIC OF VENEZUELA,
PETRÓLEOS DE VENEZUELA, S.A.,
*Appellants.*

---

RUSORO MINING LIMITED,
*Appellee,*
v.
BOLIVARIAN REPUBLIC OF VENEZUELA,
PETRÓLEOS DE VENEZUELA, S.A.,
*Appellants.*

---

KOCH MINERALS SARL and KOCH NITROGEN INTERNATIONAL SARL,
*Appellees,*
v.
BOLIVARIAN REPUBLIC OF VENEZUELA,
PETRÓLEOS DE VENEZUELA, S.A.,
*Appellants.*

---

GOLD RESERVE INC.,
*Appellee,*

v.
BOLIVARIAN REPUBLIC OF VENEZUELA,
PETRÓLEOS DE VENEZUELA, S.A.,
*Appellants.*

---

## CORPORATE DISCLOSURE STATEMENT

The Bolivarian Republic of Venezuela is a foreign sovereign, not a corporation, and is therefore not covered by Federal Rule of Appellate Procedure 26.1, which requires a disclosure by a "nongovernmental corporation," or Third Circuit LAR 26.1, which requires a disclosure by a "corporation."

# TABLE OF CONTENTS

**Page**

CORPORATE DISCLOSURE STATEMENT ........................................................i

INTRODUCTION ............................................................................................. 1

ARGUMENT ....................................................................................................3

I.      PDVSA IS NOT VENEZUELA'S ALTER EGO...........................................3

      A.     The Interim Government Does Not Dominate PDVSA's Day-to-Day Operations ...................................................................3

      B.     The Maduro Regime's Relationship To PDVSA In Venezuela Is Irrelevant................................................................12

      C.     The Pertinent Time For The Alter-Ego Analysis Is The Period Between The Attachment Motion And The Service Of The Writ ......17

II.     PDVSA'S SHARES ARE NOT SUBJECT TO ATTACHMENT...............19

      A.     Under Rule 69, Delaware Law Determines Whether PDVSA's Property May Be Attached................................................19

      B.     *Bancec*'s Federal Common-Law Test Cannot Displace Rule 69........22

            1.     *Bancec* does not extend to attachment.....................................22

            2.     Uniform treatment of foreign-state entities is not required in the attachment context ...........................................23

            3.     *Bancec* does not preempt Delaware attachment law ...............25

            4.     Delaware would not apply *Bancec* in lieu of state attachment law ...........................................................25

      C.     *Crystallex II* Did Not Decide The Issue .............................................27

CONCLUSION................................................................................................30

CERTIFICATE OF BAR MEMBERSHIP......................................................31

CERTIFICATE OF COMPLIANCE...............................................................32

CERTIFICATE OF SERVICE ........................................................................33

CERTIFICATE OF ELECTRONIC FILING..................................................34

# <u>TABLE OF AUTHORITIES</u>

<u>**Page(s)**</u>

**FEDERAL CASES**

*Alejandre v. Telefonica Larga Distancia, de Puerto Rico,*
    183 F.3d 1277 (11th Cir. 1999) ........................................................21

*Banco Nacional de Cuba v. Sabbatino,*
    376 U.S. 398 (1964) ..........................................................................15

*Bank of Nova Scotia v. United States,*
    487 U.S. 250 (1988) ..........................................................................23

*Brecht v. Abrahamson,*
    507 U.S. 619 (1993) ..........................................................................29

*Bridas S.A.P.I.C. v. Gov't of Turkmenistan,*
    447 F.3d 411 (5th Cir. 2006) ..............................................................9

*Calderon-Cardona v. Bank of New York Mellon,*
    770 F.3d 993 (2d Cir. 2014) .............................................................23

*Cassirer v. Thyssen-Bornemisza Collection Found.,*
    142 S. Ct. 1502 (2022) .....................................................................23

*Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela,*
    2021 WL 129803 (D. Del. Jan. 14, 2021) ........................................17

*Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela,*
    333 F. Supp. 3d 380 (D. Del. 2018) .............................................22, 28

*Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela,*
    932 F.3d 126 (3d Cir. 2019) .....................................................*passim*

*Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela,*
    24 F.4th 242 (3d Cir. 2022) .............................................................28

*Dole Food Co. v. Patrickson,*
    538 U.S. 468 (2003) ..........................................................................18

*EM Ltd. v. Banco de la Republica Argentina,*
    800 F.3d 78 (2d Cir. 2015) ............................................................5, 8

# TABLE OF AUTHORITIES
## (Continued)

**Page(s)**

*First Inv. Corp. of Marshall Islands v. Fujian Mawei Shipbuilding, Ltd.*,
703 F.3d 742 (5th Cir. 2012) ...................................................9

*First National City Bank v. Banco Para El Comercio Exterior de Cuba*,
462 U.S. 611 (1983).................................................*passim*

*Gater Assets Ltd. v. AO Moldovagaz*,
2 F.4th 42 (2d Cir. 2021) ........................................................8

*Gross v. German Found. Indus. Initiative*,
456 F.3d 363 (3d Cir. 2006) ...................................................15

*Guar. Tr. Co. of New York v. United States*,
304 U.S. 126 (1938)...............................................................15

*Hester Int'l Corp. v. Fed. Republic of Nigeria*,
879 F.2d 170 (5th Cir. 1989) ................................................6, 7

*IFC Interconsult v. Safeguard International Partners*,
438 F.3d 298 (3d Cir. 2006) ...................................................21

*LNC Investments v. Republic of Nicaragua*,
115 F. Supp. 2d 358 (S.D.N.Y 2000) ....................................21

*Mackey v. Lanier Collection Agency & Serv.*,
486 U.S. 825 (1988)................................................................20

*Meadows v. Dominican Republic*,
817 F.2d 517 (9th Cir. 1987) .................................................21

*Pacific Reinsurance Mgmt. Corp. v. Fabe*,
929 F.2d 1215 (7th Cir. 1991) ...............................................19

*PDVSA US Litig. Tr. v. LukOil Pan Americas*,
65 F.4th 556 (11th Cir. 2023) ................................................13

iv

## TABLE OF AUTHORITIES
### (Continued)

**Page(s)**

*PDVSA v. MUFG Union Bank, N.A.*,
    51 F.4th 456 (2d Cir. 2022) ..............................................................7, 8

*Reyes v. Netdeposit*,
    802 F.3d 469 (3d Cir. 2015) .................................................................11

*Rubin v. Islamic Republic of Iran*,
    138 S. Ct. 816 (2018).............................................................................25

*Seijas v. Republic of Argentina*,
    502 F. App'x 19 (2d Cir. 2012) ..........................................................11

*Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*,
    559 U.S. 393 (2010)...............................................................................20

*United States v. Yazell*,
    382 U.S. 341 (1966)...............................................................................20

*Weinstein v. Islamic Republic of Iran*,
    831 F.3d 470 (D.C. Cir. 2016).............................................................21

*Zivotofsky ex rel. Zivotofsky v. Kerry*,
    576 U.S. 1 (2015)...................................................................................15

**STATE CASES**

*Jimenez v. Palacios*,
    250 A.3d 814 (Del. Ch. 2019) .......................................................15, 26

*Kingsland Holdings v. Bracco*,
    1996 WL 104257 (Del. Ch. 1996)........................................................26

*State of Sao Paulo v. Am. Tobacco*,
    919 A.2d 1116 (Del. 2007) ...................................................................26

**FEDERAL STATUTES**

28 U.S.C. §§ 1604-1605B......................................................................27

## TABLE OF AUTHORITIES
### (Continued)

**Page(s)**

28 U.S.C. § 1606 ................................................................23, 24

28 U.S.C. §§ 1609-1611 ...........................................................27

28 U.S.C. § 1610 ......................................................................28

**STATE STATUTES**

8 Del. C. § 169 .........................................................................26

**RULES**

Fed. R. Civ. P. 69 ...............................................................*passim*

**OTHER AUTHORITIES**

Wright & Miller, 12 Fed. Prac. & Proc. Civ. § 3012 (3d ed.) ................................19

# INTRODUCTION

Appellees treat the district court's basis for rejecting sovereign immunity as an afterthought. Rather than focus on the district court's reasoning—that the Interim Government so pervasively controls PDVSA's U.S. operations that PDVSA can be treated as the Government's alter ego for purposes of Appellees' effort to attach PDVSA's U.S. assets—Appellees devote most of their argument to the Maduro regime's control of PDVSA's operations in Venezuela. That is telling. As the Republic's opening brief showed, and Appellees do not meaningfully refute, the district court's findings do not come close to establishing the "complete domination" on the part of the Interim Government necessary to treat PDVSA as the Republic's alter ego. *Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*, 932 F.3d 126, 140, 143 (3d Cir. 2019) ("*Crystallex II*"); *First National City Bank v. Banco Para El Comercio Exterior de Cuba*, 462 U.S. 611, 629-30 (1983) ("*Bancec*"). Far from exercising day-to-day domination, the Interim Government took extensive steps to ensure PDVSA's independence within a juridical framework reflecting the ordinary incidents of governmental supervision of a sovereign instrumentality—precisely what *Bancec* held *insufficient* to overcome the strong presumption of independence such instrumentalities enjoy in U.S. courts. And to the extent the district court relied on anything beyond such legally erroneous considerations, its findings rest on

unsupported hearsay that was contradicted by sworn testimony that the district court simply ignored.

The present case is thus the polar opposite of *Crystallex II*, where the record showed that the recognized government at the relevant time—the Maduro regime—installed government officials as key corporate officers; managed minute details of PDVSA's day-to-day operations for its own improper benefit; forced PDVSA to acquire businesses having no connection to its operations; mandated oil sales to geopolitical allies at below-market rates; and the like. Repub.Br.32-33, 35, 38. Such pervasive evidence of complete domination is doubtless why Appellees would prefer to have this Court focus on Maduro's corrupt actions. But this Court is not free to ignore the emergence of the Interim Government, its recognition by the United States, its efforts to ensure the independence of PDVSA in the United States, and the fact that Maduro no longer acts on behalf of the Republic for purposes of U.S. law. To do as Appellees wish, this Court would have to disregard both U.S. recognition policy and the uncontested fact that the U.S.-based PDVSA Ad Hoc Board—the only PDVSA entity that is before U.S. courts, and the entity whose assets Appellees seek to seize—has a relationship only with the Interim Government, not Maduro. But the facts Appellees ask this Court to ignore are the facts on which the law requires the alter-ego determination to be made, so Appellees' principal argument must be rejected.

Appellees are no more persuasive in defending the district court's unprecedented ruling that *Bancec*'s federal common-law analysis supplants Federal Rule of Civil Procedure 69(a)'s unambiguous textual command that *state* law—here Delaware law—governs whether PDVSA's assets may be attached to satisfy Appellees' judgments against the Republic. Courts applying Rule 69(a) to foreign sovereigns uniformly apply state law in doing so. The same is true of courts deciding whether to pierce the corporate veil to allow attachments. Appellees have cited no authority supporting their assertion that under Rule 69(a) state law determines only how assets may be attached, and not what assets are available for attachment. In fact, the case law says exactly the opposite. Repub.Br.47-48; p. 19, *infra*. Under Delaware law, a judgment creditor must prove fraud or similar injustice to pierce the corporate veil and reach the assets of a separate corporate subsidiary. Appellees have neither disputed that state-law standard nor tried to show it is satisfied, so their efforts to attach PDVSA's U.S. assets fail as a matter of law.

## ARGUMENT

## I.  PDVSA IS NOT VENEZUELA'S ALTER EGO

### A.  The Interim Government Does Not Dominate PDVSA's Day-to-Day Operations

*Bancec* establishes that government instrumentalities are typically subject to regulation and oversight by their parent governments and that, as a result, alter-ego status is present only when the government's control of the instrumentality

"*significantly exceeds*" the ordinary incidents of control and rises to the level of complete day-to-day domination. Repub.Br.26 (quoting *Crystallex II*, 932 F.3d at 143) (emphasis added); *see Bancec*, 462 U.S. at 624-27. Thus, Appellees do not seriously contest that the Republic's status as a "shareholder of PDVSA," OIEG.Br.38, and attributes such as "appointing Ad Hoc Board members, state ownership of PDVSA, and the Constitutional provisions" establishing state ownership of natural resources "are not enough on their own to show[] economic control," OIEG.Br.39. Although Appellees argue that *Crystallex II* included those innocuous factors within its reasons for finding the Maduro-dominated PDVSA an alter ego, they ignore that *Crystallex II* relied primarily on extraordinary domination that went far beyond ordinary government supervision. *See* p. 2, *supra*.

Here, however, the ordinary incidents of government-instrumentality status comprise the principal evidence on which the district court relied. Repub.Br.22-26, 29-30, 37-38; JA43-44, 46-52. That alone requires vacatur of the decision below. But if there were any doubt that the alter-ego finding must be reversed entirely, Appellees' brief eliminates it. Appellees contend that the decision can be affirmed because it relied on "*additional* evidence" beyond ordinary incidents of government-instrumentality status. OIEG.Br.39. But most of that "additional" evidence *also* amounts to routine instrumentality characteristics. And the remaining few findings Appellees cite either rest on obvious legal errors or—like the court's assertion that

PDVSA funds the Interim Government—are completely baseless and therefore clearly erroneous.

1.    The majority of what Appellees characterize as going beyond routine government-instrumentality attributes are standard elements of government-created entities that, as a matter of law, do not establish alter-ego status.

***Purported direction of PDVSA.***    Appellees highlight the district court's reliance on the Democracy Transition Statute, JA43, as proof that the Interim Government controlled PDVSA.   OIEG.Br.38.   But as the Republic explained, Repub.Br.28-29, and Appellees *do not dispute*, the district court committed *legal* error by misconstruing that statute, which in fact establishes the opposite of what the district court found:  that PDVSA and its subsidiaries are commercially independent, subject only to limited government oversight.   Such oversight is a routine and unobjectionable feature of instrumentality status.   Repub.Br.29.

Appellees also emphasize the district court's finding that PDVSA "fund[ed] [the government's] legal fees."   OIEG.Br.38.   But the funding was a loan that the Ad Hoc Board concluded was in *PDVSA's* interest and that observed corporate formalities.   Repub.Br.29-30.   The district court did not find otherwise.   JA44 (stating that PDVSA funds were "used" for fees without addressing procedural mechanism).   Such loans do not suggest alter-ego status.   *EM Ltd. v. Banco de la Republica Argentina*, 800 F.3d 78, 93-94 (2d Cir. 2015).

***Authorization of transactions.*** Appellees rely heavily on the district court's finding that two National Assembly enactments authorized PDVSA to use millions of dollars of PDVSA's funds for PDVSA's legal defense. JA49, JA46; JA4851-52, JA8205-06. Those enactments authorized large outside-the-normal-course expenditures of PDVSA funds and provided for National Assembly oversight to "ensure the legality, transparency, and rational nature of the contracting." JA8205. Separately, the district court found that the Venezuelan constitution requires National Assembly approval for national-interest contracts, JA47-49—something that has been true since before 2003, a time when, as the court acknowledged, PDVSA operated independently of the Venezuelan government. Repub.Br.35-36 (citing JA31).

None of these findings suggests alter-ego status. *Bancec* expressly recognized that parent governments necessarily exercise financial oversight of their instrumentalities, including by deciding on appropriations for extraordinary expenses, and by setting budgetary limits and personnel requirements. 462 U.S. at 624. Governmental approval of particularly important expenditures is just such an expected feature of government-entity relationships. *Hester Int'l Corp. v. Fed. Republic of Nigeria*, 879 F.2d 170, 180 (5th Cir. 1989); JA2107-23 (examples from numerous countries). The type of control indicative of an alter-ego relationship is

*day-to-day* control, not occasional (in fact rare) supervision of significant actions. *Id*.

**PDVSA's bond payments.**  What Appellees describe as the "most revealing" example of economic control—the National Assembly's rejection of certain bonds issued by the Maduro-controlled PDVSA—actually proves nothing.  OIEG.Br.41-42.  In 2016, over the National Assembly's objection that Maduro had not obtained constitutionally required National Assembly approval of a national-interest contract, the Maduro-dominated PDVSA issued bonds purportedly secured by a controlling interest in CITGO's holding company.  In 2019, after the Interim Government was in place, PDVSA's Ad Hoc Board made one payment on the bonds pursuant to a law requiring National Assembly approval for payments on those bonds.  JA8193-97, JA5787.  Later in 2019, the National Assembly enacted a resolution stating that the Maduro-issued bonds were void and unconstitutional.  The Ad Hoc Board then stopped payment on the bonds.  *PDVSA v. MUFG Union Bank, N.A.*, 51 F.4th 456, 463 (2d Cir. 2022); JA45, 50. Those events simply reflect the National Assembly's exercise of supervisory authority over significant payments and regulatory authority concerning the bonds' legality.

The district court's findings establish nothing more.  The payment "authoriz[ation]," JA50, found by the court was just an instance of the National Assembly's authority to approve extraordinary payments.  And the "instruction[]"

to PDVSA not to pay, *id*., was the National Assembly's 2019 resolution declaring the bonds void. The court thus found only that PDVSA complied with the law governing a controversial class of Maduro-issued bonds. As *Bancec* itself recognized, governments routinely exercise regulatory authority over instrumentalities without transforming them into alter egos, including by regulating their powers and setting budgetary limits. 462 U.S. at 624. Compliance with such regulations therefore cannot suggest the day-to-day domination that *Bancec* requires. *Accord EM*, 800 F.3d at 93.

*Debt negotiation.* Appellees point to the district court's finding that the Interim Government has "treated the liabilities of Venezuela and PDVSA as one" by stating that it plans to renegotiate PDVSA's bond debt "in an eventual restructuring." JA44. Even if true, *but see* Repub.Br.31 (discussing JA5669), that finding does not indicate an alter-ego relationship, because it is not unusual for a government to negotiate the debts of an "important domestic utility company." *Gater Assets Ltd. v. AO Moldovagaz*, 2 F.4th 42, 60 (2d Cir. 2021).

*Statements about PDVSA's relationship to the Republic.* Appellees parrot the district court's reliance on public statements to the effect that PDVSA's assets are "the assets of our Republic," JA50-52 (OIEG.Br.43). But that sort of rhetoric merely reflects the self-evident fact that PDVSA and its assets are important to the Republic, and that the Interim Government sought to reassure the Venezuelan public

8

that it would fight to protect them. Because the alter-ego determination is "concerned with . . . *how the corporation operated*," *Bridas S.A.P.I.C. v. Gov't of Turkmenistan*, 447 F.3d 411, 416 (5th Cir. 2006) (citation omitted), such public statements—without evidence that the government *in fact treated* PDVSA's assets as its own—do not suggest alter-ego status.

In all events, the very purpose of a government instrumentality—particularly a state-owned oil company—is to benefit the state by pursuing the public interest. *Bancec*, 462 U.S. at 625. Contrary to Appellees' argument, OIEG.Br.40, 43-44, therefore, the relevant question under the *Bancec* factors is whether the government benefits or profits *in a way that suggests complete domination*—such as by disregarding corporate formalities or acting in the government's interests rather than the instrumentality's. *First Inv. Corp. of Marshall Islands v. Fujian Mawei Shipbuilding, Ltd.*, 703 F.3d 742, 754 (5th Cir. 2012); Repub.Br.33. The district court made no such finding here.

2. The few district court findings that asserted something other than the normal incidents of sovereign oversight cannot support an alter-ego finding because they are all legally or factually erroneous.

First, Appellees point to the finding that Guaidó issued a decree "suspending" the Ad Hoc Board's authority. OIEG.Br.41 (quoting JA48). That is an obvious legal error. The relevant instrument suspended the authority of the Maduro-appointed

board and vested power in the Ad Hoc Board. JA8195-96; JA9335. The decree thus *facilitated* PDVSA's independence.

Second, the district court legally erred in finding that, under Venezuelan law, the Interim Government controls PDVSA's "legal strategies." OIEG.Br.39, 41, 43. The National Assembly enactment the court cited, JA20, merely authorized PDVSA's legal-fee payments, *see* p. 6, *supra*, and did not address strategy at all. JA5150; JA6695-96. Similarly, the April 2019 enactment cited by the court, OIEG.Br.41, JA48, provided only for "coordination" with respect to "legal *representation*." JA8195 (emphasis added). Confirming the clear import of these legal instruments, the Ad Hoc Board Chairman testified that the Board makes its own legal strategy decisions, but the district court simply ignored that testimony. JA6696.

The last finding on which Appellees rely—that the Interim Government allegedly used PDVSA's funds to support itself, OIEG.Br.39; JA44—is supported by *no* evidence and is therefore clearly erroneous. Like the district court, JA44, Appellees cite only (1) their attorney's unsupported assertion at argument that "commingling" occurred, JA8456-57; (2) their expert witness's assertion that the National Assembly authorized certain PDVSA legal-fee expenditures, JA548, an assertion that has nothing to do with funding the government (*see* p. 6, *supra*); and (3) a hearsay press article containing the unattributed assertion that "the Trump

administration" gave the Interim Government access to PDVSA's "U.S. bank accounts," JA5999, a statement that even if true does not establish that the Interim Government in fact used PDVSA's accounts to fund itself. Thus, *none* of the evidence on which the district court relied even suggests, much less proves, that the Interim Government used PDVSA's funds. Such "speculative" assertions cannot serve as "a basis to overcome the strong presumption of the [entity's] separate legal identity." *Seijas v. Republic of Argentina*, 502 F. App'x 19, 22 (2d Cir. 2012).

Appellees therefore fell far short of satisfying their burden of establishing that the Interim Government used PDVSA's funds. And, though Appellants had no burden to rebut Appellees' non-evidence, they did so definitively. The Democracy Transition Statute and Presidential Decree No. 3 prohibit the Interim Government from using PDVSA's resources. JA770; JA6755. And Appellants presented not only evidence that the Interim Government had its own sources of funding, JA8248, but also the sworn testimony of PDVSA's Ad Hoc Board Chairman that the Interim Government never had access to PDVSA's funds, JA6695-96. Appellees denigrate that testimony as "self-serving," OIEG.Br.39—but the court made no adverse credibility finding. It simply ignored the testimony without giving any reason to discount it. That is the very definition of clear error. *See Reyes v. Netdeposit*, 802 F.3d 469, 493 n.18 (3d Cir. 2015).

3.     As *Crystallex II* confirms, the *Bancec* factors must be applied in a manner that distinguishes *complete domination* from ordinary government supervision of instrumentalities.  932 F.3d at 143; *Bancec*, 462 U.S. at 626-27.  Yet the court made no findings that could establish day-to-day domination—other than the legally and factually erroneous findings discussed above, which must be disregarded.  Indeed, there is not a shred of evidence of the sort of domination that supported this Court's finding of alter-ego status under Maduro:  the Interim Government did not, for instance, take PDVSA's funds for itself, commingle assets, impose extraordinary taxes, or appoint military officials to run PDVSA.  *Crystallex II*, 932 F.3d at 147-49.

**B.     The Maduro Regime's Relationship To PDVSA In Venezuela Is Irrelevant.**

Unsurprisingly, Appellees would prefer to focus on the Maduro-related facts present in *Crystallex II*, on the theory that "PDVSA" is a single corporate entity controlled in part by the illegitimate Maduro regime.  OIEG.Br.31-32.  That theory is meritless, and the district court correctly rejected it.

1.     In 2019, the National Assembly—part of Venezuela's U.S.-recognized government—enacted the Democracy Transition Statute, which established the Ad Hoc Board to govern PDVSA's operations outside Venezuela without interference from Maduro.  The statute provided that the Ad Hoc Board would be appointed and regulated solely by the Interim Government, and it prohibited the Board from taking

direction from Maduro.  JA769-70.  The statute further provided that the Board, not the Venezuela-based PDVSA or the Maduro regime, would have sole authority to "exercise PDVSA's rights as shareholder of PDV Holding, Inc."—the Delaware company whose shares Appellees seek to attach.  JA769.

The Democracy Transition Statute thus effectively divorces PDVSA's operations outside Venezuela—including PDVSA's management of its U.S. subsidiaries—from its operations within the country.  The PDVSA that operates inside Venezuela remains subject to the Maduro regime's control, while the PDVSA that operates in the United States is governed by the Guaidó-appointed Ad Hoc Board and is subject only to laws enacted by the recognized National Assembly.

2.    That change in PDVSA's U.S. leadership has dispositive consequences for the jurisdictional alter-ego analysis.  Because the Interim Government is the only recognized government, the "Guaidó-appointed officials" of the Ad Hoc Board are the only corporate "officers and directors" authorized to represent PDVSA in U.S. courts.  *PDVSA US Litig. Tr. v. LukOil Pan Americas*, 65 F.4th 556, 563 (11th Cir. 2023) (relying on recognition principles to bar Maduro-appointed PDVSA officials from representing PDVSA in court).  As a result, the U.S.-based Ad Hoc Board is the only PDVSA entity before the Court.

The question therefore is whether the U.S.-based PDVSA—*the entity represented by the Guaidó-appointed Ad Hoc Board*—is subject to jurisdiction.  The

existence of jurisdiction over *that* PDVSA turns on whether the Ad Hoc Board is dominated by its parent government.  The parent government is the Interim Government:  the Ad Hoc Board has a relationship only with the Interim Government and lacks any legal or factual relationship with the Maduro regime, as the district court found.  JA41-42.  The alter-ego analysis must therefore focus on the Interim Government alone.[1]

That conclusion is reinforced by the fact that Appellees seek jurisdiction over PDVSA in order to attach property under the sole control of the U.S.-based PDVSA's Ad Hoc Board.  It should be self-evident that the "relevant entity," *id.*, before the Court in an attachment action is the entity that has legal and practical control over the property sought to be attached.

3.    Appellees nonetheless contend that the Court should treat "PDVSA" as one undifferentiated global "corporate enterprise" that is governed by both the *unrecognized* Maduro government and the recognized Interim Government.  OIEG.Br.31-32 n.5.  But doing so would violate the Court's constitutional obligation

---

[1] Appellees' insistence that *Bancec* establishes a "totality of the circumstances" test, OIEG.Br.24, is misplaced.  The only "circumstances" relevant to whether a government instrumentality is completely dominated by its parent "foreign government[]," *Bancec*, 462 U.S. at 628, concern the relationship between the instrumentality before the court and its actual parent government—here, the Ad Hoc Board and the Interim Government.

to abide by U.S. recognition policy.  *Zivotofsky ex rel. Zivotofsky v. Kerry*, 576 U.S. 1, 19 (2015).

For one thing, because the National Assembly is part of Venezuela's U.S.-recognized government, U.S. courts are constitutionally required to give legal effect to the National Assembly's enactments, including the Democracy Transition Statute, as acts of state.  *Banco Nacional de Cuba v. Sabbatino*, 376 U.S. 398, 410 (1964); *id.* at 401; *Gross v. German Found. Indus. Initiative*, 456 F.3d 363, 391 (3d Cir. 2006).  But to treat PDVSA as though it retains a unified chain of command overseen by both Maduro and the Interim Government, as Appellees urge, would be to disregard the National Assembly's creation of the Ad Hoc Board to oversee U.S.-based assets insulated from Maduro.  That this Court may not do.  *Accord Jimenez v. Palacios*, 250 A.3d 814, 841 (Del. Ch. 2019).

In addition, allowing Maduro's actions to determine alter-ego status would treat those actions as those of the government of Venezuela, contrary to the Executive Branch's refusal to recognize the Maduro regime.  Because "[t]he refusal to recognize . . . signifies this country's unwillingness to acknowledge that the government in question speaks as the sovereign authority for the territory it purports to control," *Sabbatino*, 376 U.S. at 410, courts may not give *legal* effect to actions of an unrecognized government in a manner that acknowledges, for purposes of U.S. law, that the unrecognized regime exercises governmental authority, *Guar. Tr. Co.*

Case: 23-1651    Document: 69    Page: 24    Date Filed: 05/30/2023

*of New York v. United States*, 304 U.S. 126, 137 (1938).  That, however, is precisely what Appellees seek.  They ask this Court to hold that Maduro's control over PDVSA in Venezuela renders PDVSA an alter ego of the Republic—that is, of Venezuela's *government*—for purposes of the FSIA.  But only *governmental* actions of the Republic could render PDVSA the Republic's alter ego and abrogate its U.S. sovereign immunity.  If, for instance, the Maduro regime were a private criminal organization that had seized control over Venezuela, including by occupying PDVSA's facilities and dominating its board, no one would think that PDVSA should lose its sovereign immunity on the ground that it is the *government's* alter ego—let alone with respect to PDVSA's U.S. property over which Maduro has no control.  To give Maduro's actions any weight would be to impermissibly treat those actions as those of the Venezuelan government for purposes of U.S. law.

4.     Appellees' remaining arguments lack merit.  Appellees contend that their claims "lie[] against Venezuela the state, not against any particular government."  OIEG.Br.25, 32-33.  That truism is irrelevant.  Appellees seek to enforce their judgment not against Venezuela itself, but against a presumptively separate entity.  Appellees therefore must establish jurisdiction over PDVSA, which they have chosen to do by asserting that PDVSA is the alter ego of its parent government.  That argument requires the Court to examine the relationship between PDVSA and its parent government—the Interim Government.

16

Finally, Appellees suggest that the Court should consider Maduro's actions because doing so would reach a "just result," given that Maduro remains in power in Venezuela.  OIEG.Br.33, 35.  That is an invitation the Court must decline.  The Executive recognized the Interim Government to promote democracy in Venezuela; and, aided by U.S. support, the Interim Government enacted laws designed to remedy Maduro's corruption of the government's instrumentalities.  That the Interim Government did not displace Maduro in Venezuela cannot justify treating the former's actions with anything less than the respect that courts must accord to the recognized government of a foreign sovereign.

### C.    The Pertinent Time For The Alter-Ego Analysis Is The Period Between The Attachment Motion And The Service Of The Writ

This court should reject Appellees' contention that the pertinent time for the alter-ego analysis is the time of injury.  Alter-ego status must be assessed based on the purposes for which Appellees assert it:  to establish that this Court has jurisdiction over PDVSA and that the Republic should be deemed the owner of PDVSA's property.  For both purposes, "the pertinent time" is "the period between the filing of the motion seeking a writ of attachment and the subsequent issuance and service of that writ."  JA74 (district-court holding) (quoting *Crystallex III*, 2021 WL 129803, at *6).

Under the FSIA, "the jurisdiction of the Court depends upon the state of things at the time of the action brought," not the "time of the conduct giving rise to the

17

suit." *Dole Food Co. v. Patrickson*, 538 U.S. 468, 478 (2003).  That follows from the purpose of foreign sovereign immunity, which is "to give foreign states and their instrumentalities some protection from the inconvenience of suit," *Dole*, 538 U.S. at 479; *see Bancec*, 462 U.S. at 626-27—a concern that arises when suit is filed, not when the injury occurred.

In addition, the purpose of these actions is to enforce Appellees' judgments against the Republic by attaching PDVSA's property—on the theory that PDVSA's property should be treated as the Republic's.  JA224, 234, 236, 248, 259-63. Property can be attached only if it is the debtor's property at the time the writ is served, *Crystallex II*, 932 F.3d at 134, because a court may not attach a non-debtor's property merely because it *previously* belonged to the debtor.  The cases on which Appellees rely are inapposite, OIEG.Br.46-47, because they involve using alter-ego principles to shift *liability* for the underlying conduct.  Here, however, Appellees declined to attribute substantive liability to PDVSA, and instead chose to proceed solely on the theory that PDVSA's property should be treated as the Republic's for jurisdictional and attachment purposes.  They must live with the consequences of that choice.

## II. PDVSA'S SHARES ARE NOT SUBJECT TO ATTACHMENT

### A. Under Rule 69, Delaware Law Determines Whether PDVSA's Property May Be Attached

Under Rule 69, "which assets may be reached" through attachment is a procedural question determined by state law, not a question of substantive liability. *Pacific Reinsurance Mgmt. Corp. v. Fabe*, 929 F.2d 1215, 1219 (7th Cir. 1991). And deciding which assets may be reached includes deciding whether any applicable state-law veil-piercing requirement has been satisfied, so as to resolve questions such as "whether the defendant has an interest in property subject to execution" and "the liability of a successor corporation." Wright & Miller, 12 Fed. Prac. & Proc. Civ. § 3012 & n.25 (3d ed.).

Federal courts invariably apply Rule 69 when deciding attachment questions involving foreign sovereigns, Repub.Br.47 n.6, and they invariably apply state veil-piercing law when deciding attachment questions under Rule 69, Repub.Br.48. If state alter-ego rules are rules of "procedure" when applied to private corporations, then they likewise must be rules of "procedure" when applied to corporations that are foreign-sovereign instrumentalities. The same word in that rule cannot be read to mean two different things depending on whose assets are at issue. Indeed, Crystallex has previously conceded as much in its attachment proceedings against the Republic. *See* Br. in Opp. 15 (S. Ct. No. 19-1049) (stating that "Delaware law"

19

is "applicable here pursuant to Rule 69" and that among state law's "procedures" is the veil-piercing inquiry).

In arguing otherwise, Appellees distort the substance/procedure distinction. The test for whether a requirement is "procedural" is not whether it "affects a litigant's substantive rights," since "most procedural rules do." *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 407 (2010) (opinion of Scalia, J.) (discussing Rules Enabling Act). Rather, a requirement is procedural if it "governs only 'the manner and the means' by which the litigants' rights are 'enforced.'" *Id.* Here, no one contends that PDVSA is directly liable such that the creditors' judgments embody a debt-collection right vis-à-vis PDVSA. Appellees' judgments entitle them only to payment from the Republic, and the "manner and means" of enforcing those judgments is seeking property that is subject to attachment for the Republic's debt. If state law provides that certain property is not subject to attachment, then a judgment creditor cannot use that particular "manner and means" of enforcement. *See, e.g.*, *United States v. Yazell*, 382 U.S. 341, 355 (1966) (under Rule 69, federal courts must apply state-law homestead exemptions, which address *which* property can be executed upon); *Mackey v. Lanier Collection Agency & Serv.*, 486 U.S. 825, 834 n.10 (1988) (rejecting argument that state garnishment law is "substantive" given that it "is nothing more than a method to collect judgments *otherwise* obtained").

Appellees identify no decision concluding that state alter-ego laws are outside Rule 69(a)'s ambit because they are "substantive." *Weinstein v. Islamic Republic of Iran*, 831 F.3d 470 (D.C. Cir. 2016), cited in OIEG.Br.51, stated in dicta that "Rule 69(a)(1) requires a preliminary determination" of whether a law "is in fact procedural," *id.* at 480 n.18, but did not apply that inquiry to state veil-piercing laws. *LNC Investments v. Republic of Nicaragua*, 115 F. Supp. 2d 358, 363 (S.D.N.Y 2000), cited in ACL1.Br.9, nowhere addresses the applicability of state veil-piercing laws under Rule 69. *Meadows v. Dominican Republic*, 817 F.2d 517, 524 (9th Cir. 1987), cited in Crystallex.Br.20, concerns neither execution nor Rule 69, but instead principles of waiver, and *IFC Interconsult v. Safeguard International Partners*, 438 F.3d 298, 318-20 (3d Cir. 2006), cited in Crystallex.Br.19-20, involved the substantive question of whether a garnishee was *directly* liable for another's debt under an indemnification agreement.    Finally, *Alejandre v. Telefonica Larga Distancia, de Puerto Rico*, 183 F.3d 1277, 1288 (11th Cir. 1999), cited in ACL1.Br.9, supports the Republic, because there the court considered "whether the plaintiffs carried their burden under Florida law of proving the alter-ego relationship between the Cuban Government" and its instrumentality.

21

## B.     *Bancec*'s Federal Common-Law Test Cannot Displace Rule 69

Appellees do not contest that Delaware's "fraud or injustice" requirement cannot be satisfied here.  Instead, they trot out theory after meritless theory for why *Bancec*'s federal common-law test should supplant state law under Rule 69.

### 1.     *Bancec* does not extend to attachment

*Bancec* did not involve attachment proceedings against a foreign instrumentality and thus had no occasion to address Rule 69(a).  Repub.Br.52-53.  Had the case arisen in that context, the Supreme Court could not have applied federal common law, because such law cannot override an applicable Federal Rule.  Repub.Br.51-52.

Appellees elide the disconnect between *Bancec* and the present appeals by asserting that both concern "liability."  Crystallex.Br.17.  That is untrue.  Liability runs against a *party* (not property) and makes all of that party's non-exempt property available to satisfy a judgment.  *Bancec* addressed whether a foreign-state instrumentality was subject to direct liability on a counterclaim.  462 U.S. at 613, 622 n.11.  Again, however, neither Crystallex nor Appellees have brought any substantive claim against PDVSA or sought to hold PDVSA directly liable for the Republic's debts.  *See, e.g.*, *Crystallex I*, 333 F. Supp. 3d at 392 & n.9 (Crystallex was not "attempting to hold PDVSA primarily liable" but only to "attach[] PDVSA property").

### 2.    Uniform treatment of foreign-state entities is not required in the attachment context

Appellees also argue that *Bancec* reflects an overriding interest in uniformity that reliance on Rule 69 would undermine.   But courts have no "discretion to disregard the Rule's mandate," *Bank of Nova Scotia v. United States*, 487 U.S. 250, 255 (1988), based on Appellees' policy instincts.   In all events, Rule 69 *enforces* uniformity by ensuring equivalent treatment of non-immune foreign sovereigns and private parties.   Section 1606 of the FSIA expresses that federal policy, providing that a non-immune foreign state "shall be liable in the same manner and to the same extent as a private individual."   28 U.S.C. § 1606; *accord Cassirer v. Thyssen-Bornemisza Collection Found.*, 142 S. Ct. 1502, 1508 (2022).   As that provision reflects, there is "scant justification for federal common lawmaking" where "a foreign state has lost its broad immunity and become subject to standard-fare legal claims involving property, contract, or the like." *Cassirer*, 142 S. Ct. at 1509; *see, e.g.*, *Calderon-Cardona v. Bank of New York Mellon*, 770 F.3d 993, 1001 (2d Cir. 2014) (foreign-state "'property' interests are ordinarily those created and defined by state law").   These appeals implicate just such questions of property law—*i.e.*, whether and when a corporation's assets may be used to satisfy a judgment against its shareholder.

Appellees contend that *Bancec* distinguished Section 1606 in a way that is relevant here by stating that the provision is "silent . . . concerning the rule governing

the attribution of liability *among* entities of a foreign state."  462 U.S. at 622 n.11; *see, e.g.*, ACL1.Br.11-12.  But Rule 69 governs here, and it is not silent about the question of what law applies.  In *Bancec*, neither Section 1606 nor any other FSIA provision spoke *expressly* to whether state law governed the question before the Court.  But Rule 69(a) states that execution procedures "must accord with the procedure of the state."  Fed. R. Civ. P. 69(a).  The absence of an exemption for property of non-immune foreign instrumentalities does not mean that Rule 69(a) leaves a gap for federal common law to fill; it means that no exemption exists.  In addition, Rule 69's applicability does not depend on Section 1606.  The rule applies by its own force, and nothing in the FSIA displaces it.

Moreover, this case does not involve "the attribution of liability among entities of a foreign state."  462 U.S. at 622 n.11 (emphasis omitted).  Appellees have eschewed any argument that PDVSA is itself liable.  The sole question is whether PDVSA's property is subject to attachment, which is not a question of liability.  And *Bancec* does not address what law should govern whether a non-liable instrumentality's assets may be attached to satisfy a judgment against a foreign state.  Rather, Rule 69 fully occupies that field.[2]

---

[2] The creditors are thus wrong (*e.g.*, Crystallex.Br.20-22) that *Bancec* would preclude application of Delaware law if this Court deems Delaware's veil-piercing rules "substantive."  Repub.Br.48 n.7.

### 3.     *Bancec* does not preempt Delaware attachment law

According to ACL1 (Br.15), *Bancec* preempts Delaware veil-piercing law because Rule 69(a) incorporates Delaware law; Delaware law is preempted by federal common law; and Delaware law is therefore replaced by the *Bancec* test. That is pretzel logic. Rule 69 reflects *Congress's judgment* that the state's *own* procedures "must" govern attachment, Fed. R. Civ. P. 69(a). It makes no exception for proceedings involving foreign instrumentalities.

OIEG advances the equally baseless contention (Br.52) that the *Bancec* factors are "implicit" in the FSIA and therefore should be treated as a federal statute for Rule 69 purposes. OIEG draws a negative implication from Section 1610(g) of the FSIA, which "abrogate[s] *Bancec*" in deciding immunity as to certain terrorism-related judgments. *Rubin v. Islamic Republic of Iran*, 138 S. Ct. 816, 823 (2018). But Congress's decision to stop courts from applying *Bancec* in one context does not transmogrify *Bancec*'s common-law rule into generally applicable statutory law. The FSIA extensively discusses immunity from attachment but says *nothing* about attachment procedures. As to those procedures, Rule 69 governs.

### 4.     Delaware would not apply *Bancec* in lieu of state attachment law

Finally, even if Rule 69 permitted deviation from ordinary state procedures, Delaware would not itself *choose* to apply *Bancec* rather than its ordinary alter-ego standard. *Contra* ACL1.Br.12-14. Delaware applies its own laws—including veil-

piercing laws—to proceedings to attach property located in Delaware, as the property here is deemed to be.  *See* 8 Del. C. § 169; *see also, e.g.*, *Kingsland Holdings v. Bracco*, 1996 WL 104257, at *7 (Del. Ch. 1996) (in enforcing judgment against Delaware-based property, "the Court of Chancery may determine the nature of [the judgment debtor's] interest in the stock," including whether the debtor "is using the subsidiary as an alter ego").

ACL1 cites two Delaware decisions—neither of which concerns attachment or veil-piercing—to argue that Delaware courts generally "are sensitive to federal interests in matters affecting foreign relations." ACL1.Br.14.  But that hardly suggests that Delaware courts would counterintuitively treat foreign states or their instrumentalities *worse* than private parties when attachment is sought.  In all events, neither decision supports ACL1's argument.  One straightforwardly applies Delaware law.  *See State of Sao Paulo v. Am. Tobacco*, 919 A.2d 1116, 1123 (Del. 2007) (asking whether to "recognize, *as legally cognizable under Delaware law*," a claim "by foreign government plaintiffs" (emphasis added)).  The other applies Supreme Court precedent "preclud[ing] the application of state laws" to decide the propriety of foreign-sovereign acts in the sovereign's territory, *Jimenez*, 250 A.3d at 835—precedent that has no applicability here.

### C.    *Crystallex II* Did Not Decide The Issue

*Crystallex II* addresses only whether the district court had jurisdiction to attach PDVSA's property because neither PDVSA nor that property was immune under the FSIA.  *See* Br.55-56; 28 U.S.C. §§ 1604-1605B (foreign-state immunity from courts' jurisdiction); *id.* §§ 1609-1611 (property's immunity from attachment). The opinion makes that clear from start to finish, beginning by identifying "three core inquiries"—"(A) whether the *Bancec* 'alter ego' doctrine determines the District Court's jurisdiction," "(B) the scope of the *Bancec* inquiry" as to jurisdiction, and "(C) whether PDVSA's shares of PDVH are immune from attachment"—and ultimately holding that "[t]he District Court acted *within its jurisdiction* when it issued a writ of attachment on PDVSA's shares of PDVH" and "the PDVH shares are *not immune* from attachment."  932 F.3d at 136, 152 (emphasis added).  This Court nowhere considered, much less decided, whether *Bancec*'s federal common-law rule or Rule 69 governs the attachability of PDVSA's property.  That makes sense, because that issue was not briefed.

Appellees struggle to avoid that conclusion, but to no avail.  They emphasize (*e.g.*, ACL1.Br.6-7) that *Crystallex II* affirmed the district court's "follow-up order"

directing "the Clerk to issue the writ."[3] *Crystallex II*, 932 F.3d at 134.  But that affirmance, which reflects the Court's conclusion that the assets in question were not immune from execution under the FSIA, *see* 28 U.S.C. § 1610; 932 F.3d at 136, cannot have foreclosed raising attachability issues at a later stage.  Indeed, in the decision on appeal in *Crystallex II*, the district court itself observed that PDVSA could "seek to challenge the writ on non-jurisdictional grounds by a motion to quash brought after the writ has issued." *Crystallex I*, 333 F. Supp. 3d at 425.  That is no doubt why neither the parties nor the Court mentioned attachability in *Crystallex II*.[4]

The creditors also point to various artfully chosen snippets of text.  As to the snippets from *Crystallex II*, each is about jurisdiction, not attachability.  *Compare, e.g.*, OIEG.Br.50 (arguing that *Crystallex II* "stated that *Bancec* can 'be used to reach the assets of a foreign sovereign's extensively controlled instrumentality'"), *with Crystallex II*, 932 F.3d at 138 (*Bancec* "applie[s] to extend a district court's *jurisdiction* over a foreign sovereign to reach an extensively controlled instrumentality") (emphasis added).  The snippets from various briefs are similarly

_____

[3] PDVSA appealed the second order "out of an abundance of caution," noting that the issues "under the FSIA" that PDVSA wanted to raise—*i.e.*, jurisdiction and immunity issues—were already before this Court via appeal from the first order.  *See* ECF 117, No. 17-mc-151 (D. Del. Sept. 24, 2018).

[4] Moreover, in *Crystallex IV*, this Court ruled that the validity of the attachment was not appealable.  24 4th at 254-56.  That would have been odd if *Crystallex II* had already exercised appellate jurisdiction to affirm on the merits.

inapposite.  For instance, Crystallex (Br.10) seizes on a single sentence in PDVSA's *Crystallex II* reply brief observing that "application of the *Bancec* test is the same in the jurisdictional context as in the liability context."  PDVSA.Reply.Br.11, No. 18-2797.  But, as discussed above, attachment proceedings concern neither jurisdiction nor liability.  PDVSA did not make any claim about what law should govern in the event that this Court found jurisdiction proper, but sought "*only* . . . to enforce its statutory right to its own immunity from jurisdiction."  *Id.* at 10-11 (emphasis added).

In the end, the creditors not only misread *Crystallex II* but also misunderstand what constitutes a binding holding.  *Crystallex II* did not address Rule 69 or what law governs whether attachment is procedurally proper.  *Crystallex II* also did not decide those issues by necessary implication; nothing about this Court's ruling on jurisdiction and immunity under the FSIA requires, as a logical matter, that the Court also have decided that Delaware law is irrelevant to deciding which property the creditors can attach.  The most one could possibly say, then, is that the prior panel assumed that *Bancec* would apply—and this Court is not bound by unstated assumptions.  *See, e.g.*, *Brecht v. Abrahamson*, 507 U.S. 619, 631 (1993) ("since we have never squarely addressed the issue, and have at most assumed the applicability of [a standard], we are free to address the issue on the merits").

## CONCLUSION

The district court's order should be reversed or, at a minimum, vacated and remanded.


Dated:  May 30, 2023                    Respectfully submitted,

                                        */s/ Donald B. Verrilli, Jr.*
                                        Donald B. Verrilli, Jr.
                                        Elaine J. Goldenberg
                                        Ginger D. Anders
                                        Sarah Weiner
                                        Kathleen Foley
                                        MUNGER, TOLLES & OLSON LLP
                                        601 Massachusetts Ave. NW
                                          Suite 500E
                                        Washington, D.C. 20001-5369
                                        (202) 220-1100

                                        *Counsel for the Bolivarian Republic of Venezuela*

## CERTIFICATE OF BAR MEMBERSHIP

I hereby certify that at least one attorney whose name appears on this Brief is a member in good standing of the bar of the United States Court of Appeals for the Third Circuit.

Date: May 30, 2023

Respectfully submitted,

*/s/ Donald B. Verrilli, Jr.*
Donald B. Verrilli, Jr.
*Counsel for the Bolivarian Republic of Venezuela*

## CERTIFICATE OF COMPLIANCE

1.      This document complies with the word limit of Fed. R. App. P. 32(a)(7)(B), because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 6,494 words.

2.      This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word 2010 in 14 point, Times New Roman.

3.      The electronic copy of the Brief has been scanned for viruses and none were detected.

Date: May 30, 2023                          Respectfully submitted,

                                            */s/ Donald B. Verrilli, Jr.*
                                            Donald B. Verrilli, Jr.
                                            *Counsel for the Bolivarian Republic
                                            of Venezuela*

## CERTIFICATE OF SERVICE

I hereby certify that on May 30, 2023, the foregoing document was served on all parties or their counsel of record through the CM/ECF system.  .

Dated: May 30, 2023

*/s/ Donald B. Verrilli, Jr.*
Donald B. Verrilli, Jr.
*Counsel for the Bolivarian Republic of Venezuela*

## CERTIFICATE OF ELECTRONIC FILING

I hereby certify that the text of the electronic Brief filed through the CM/ECF system is identical to the text in the paper copies dispatched on May 30, 2023, by Federal Express Overnight delivery to the Clerk of the Court of the United States Court of Appeals for the Third Circuit.

Dated: May 30, 2023                    */s/ Donald B. Verrilli, Jr.*
                                       Donald B. Verrilli, Jr.
                                       *Counsel for the Bolivarian Republic of Venezuela*